IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN STEGMANN, individually and behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 1:22-cv-01179 |
| v. ) ) | Hon. Thomas M. Durkin |
| PETSMART LLC, ) ) | |
| Defendant. ) | |

**PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*
*Attorneys for Plaintiff and
Others Similarly Situated*

1

I.  **Introduction**

Plaintiff Steven Stegmann ("Plaintiff") brought this class action lawsuit claiming that Defendant PetSmart LLC ("Defendant") violated the Illinois Biometric Information Privacy Act ("BIPA") through the use of a Vocollect order picking system at Defendant's distribution center in Ottawa, Illinois. Plaintiff and Defendant collectively are referred to as the "Parties." Capitalized terms not defined in this motion shall have the meanings set forth in the Settlement Agreement attached as Exhibit 1.

The Parties have reached a $424,455 class settlement for the 472 Settlement Class Members—representing gross settlement funding of approximately $900 per person. This is a strong result for the Class as a whole and the Settlement is structured to maximize the number of Settlement Class Members who will receive a settlement payment: each Settlement Class Member will automatically be sent a payment unless they opt out or file a claim form electing to receive an award of paid time off; there is no requirement that they submit a claim form to receive a pro rata cash payment.

For the reasons set forth below, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order.

II.  **Background**

On January 20, 2022, Plaintiff filed a Class Action Complaint in the Circuit Court for the 13th Judicial Circuit, LaSalle County, Illinois, alleging that Defendant violated BIPA through use of a Vocollect system. (Dkt. No. 1). In particular, Plaintiff alleged that Defendant violated BIPA by failing to do four things:

1) Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2) Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their voiceprints)

or biometric information was being collected, stored, and used, as required by BIPA;

3) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers or biometric information, as required by BIPA; nor

4) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On March 7, 2022, Defendant removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 5. On April 6, 2023, the Parties informed the Court that they had reached a class-wide settlement. Dkt. No. 39. Following a number of drafts of a settlement agreement, the Parties were able to come to a mutually agreeable resolution of their claims.

Unlike the typical biometric case in the employer context that involves the use of fingerprints for timekeeping, this case involved warehouse workers utilizing a headset like the one pictured to the right. While the Defendant disagreed, Plaintiff alleged that the technology at issue utilized a "voiceprint", which is protected under the Biometric Information Privacy Act.

### III. Summary of Settlement Terms (Ex. 1, Settlement Agreement)

#### A. The Proposed Settlement Class (Ex. 1, Settlement Agreement, ¶¶ 17, 30)

The proposed Settlement Class includes a total of 472 identified individuals who were employed by Defendant during the class period who used the Vocollect system and who are not subject to an arbitration agreement with Defendant. The Class Representative seeks preliminary approval of a Settlement Class consisting of the following:

> The persons identified on the Class List, which includes the current and former PetSmart LLC employees that PetSmart LLC's records identify as having used the Vocollect system at the Ottawa, Illinois distribution center during the period from January 20, 2017 to the date of preliminary approval of the settlement and who are not subject to an

arbitration agreement with PetSmart LLC.

The Parties agreed to limit the scope of the Settlement Class to Defendant's employees that Defendant's records identify as having used the Vocollect system and who are not subject to an arbitration agreement with Defendants.

**B.　　Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, ¶ 38)**

While denying all liability and wrongdoing, Defendant has agreed to create a Gross Settlement Fund of $424,455.00 ($899.27 per person based upon an estimated total class size of 472) to resolve the claims of Settlement Class Members on a class basis. The Gross Settlement Fund is the maximum amount Defendant shall be obligated to pay under the Settlement. The "Net Settlement Fund" is the Gross Settlement Fund minus Administrative Expenses and Court-awarded amounts for Plaintiff's Service Award and the Fee Award. The Net Settlement Fund shall be used to distribute benefits to Settlement Class Members as set forth in the Settlement Agreement.

Unless they exclude themselves, Settlement Class Members who are not employed by PetSmart as of the date of payment will be paid pro rata via direct checks from the Net Settlement Fund. Settlement Class Members who are currently employed by PetSmart will be offered the choice of (i) a pro rata cash payment via direct check (as received by former employee Settlement Class Members); or (ii) an award by PetSmart of paid time off with a value equal to the pro rata cash payment.  For example, if the pro rata direct check payment is $550 per person, a Settlement Class Member who selects the paid time off option who earns $20 per hour would receive 27.5 hours of paid time off.

Settlement Class Members who elect to receive paid time off can use it at any time during which Defendant's employees otherwise are permitted to use paid time off: (a) during the calendar

4

year in which the paid time off is awarded under this Settlement; and (b) during the next calendar year. After that period, any unused paid time off awarded under this Settlement will expire. Because Settlement Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Settlement Class Members are able to participate and the default option is the cash payment. Finally, if a Settlement Class Member who elected paid time off is separated from Defendant for any reason prior to the date that the Settlement Administrator makes payments, the Settlement Class Member will receive a pro rata cash payment from the Settlement Administrator via direct check in the same amount as those persons who did not elect paid time off.

C. *Cy Pres* Recipient
(Ex. 1, Settlement Agreement, ¶38i)

Under the terms of the Settlement, Settlement Class Members will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed equally, 50% of uncashed checks to *cy pres* recipient Prairie State Legal Services subject to approval by the Court and 50% of uncashed checks returned to the Defendant. *Id.* ¶ 38(i).

D. **Release of Claims (Ex. 1, Settlement Agreement, ¶ 41 )**

Settlement Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from the Released Claims, which are defined in the Settlement Agreement to include: "any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on BIPA or other federal, state, local, statutory or common law or any other law, against the Released Parties, or any

of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the collection, capture, storage, use, profit from, possession, disclosure, and/or dissemination of biometric data, including all claims that were brought or could have been brought in the Action, belonging to any and all Releasors."

    E.   **Settlement Administration (Ex. 1, Settlement Agreement, ¶¶ 29, 36d)**

The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator.

    F.   **Notice of Class Action Settlement (Ex. 1, Settlement Agreement, ¶ 48, Ex A)**

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made, exclusion, or how to submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Award; and (6) the Final Approval Hearing details.

    G.   **Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 49)**

The Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address ("NCOS") database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run an advanced search to locate an updated address.

    H.   **Service Award (Ex. 1, Settlement Agreement, ¶ 63)**

Under the Settlement Agreement, Class Counsel may request that the Court award the

Class Representative up to $5,000 as a Service Award for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, recovering money for the Settlement Class, and for his release of claims. Class Counsel will file the request for the Service Award with their motion for attorney fees and costs, described below.

> I. **Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 60)**

Under the Settlement Agreement, Class Counsel may request that the Court award them up to 35% of the Gross Settlement Fund as attorneys' fees plus their unreimbursed litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Final Approval Hearing.

**IV.     The Court Should Grant Preliminary Approval: Settlement of Class Action Litigation is Favored**

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> Preliminary approval of the proposed settlement at an informal hearing; Dissemination of mailed and/or published notice of the settlement to all affected class members; and A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq*. With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

7

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### A. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representative pursued this case vigorously on behalf of a potential class. As a result of Class Counsel's and the Class Representative's sustained effort, diligent settlement negotiations, substantial experience in BIPA litigation, the Parties reached a Settlement that makes meaningful monetary relief available to Settlement Class Members, with an appropriately tailored release of claims.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

#### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

This Settlement here exceeds other approved BIPA class settlements. *See e.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring); *Taylor v. Sunrise Assisted Living,* 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.)(BIPA settlement of $400 per person with reversion); *Zepeda v.*

*Kimpton Hotel & Restaurant Group, LLC*, 2018 CH 2140 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc.* 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) (per member BIPA allocation of between $768 and $1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020)(per member BIPA allocation of $800 per person).

Likewise, this settlement is identical in amount to another BIPA settlement based on the same Vocollect technology that was brought against Whole Foods which received final approval. *See, Ricky Jones v. Whole Foods Market Group, Inc.*, 2022 CH 0060 ($899.37 per person).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation. In particularly, unlike most biometric technologies involving fingerprints, the use of a voiceprint involves a unique and different technology that would be the subject of conflicting expert opinions.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail. Ex. 1, Settlement Agreement, ¶ 49. This notice program rivals those implemented in similar settlements. Settlement Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Settlement Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement or elect to receive an award of paid time off. The Settlement

Administrator will distribute funds to Settlement Class Members via check to their last known mailing address.

### c. The terms of the proposed attorney fee award, including timing of payment

Class Counsel will seek an award of attorney fees of up to 35% of the Gross Settlement Fund plus unreimbursed litigation costs. Ex. 1, Settlement Agreement ¶ 60. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Class Counsel.

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is Exhibit 1 to this Motion. There are no side agreements regarding the Settlement Class or attorneys' fees related to this Settlement.

### e. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Settlement Class Members equally by distributing benefits from the Net Settlement Fund on a *pro rata* basis. Ex. 1, Settlement Agreement, ¶ 38. All Settlement Class Members will be sent a check to their last known address for their pro rata share of the net amount unless they elect to receive an award of paid time off.

## B. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that his claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

#### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 472, Ex. 1, Settlement Agreement, ¶ 17, which satisfies numerosity.

### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The claims of Settlement Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Settlement Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Class Representative and Settlement Class Members arise from the same conduct: Defendant's alleged collection of biometric data through use of a voice technology system without obtaining informed written consent. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class

representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Class Representative alleges the same biometric claims as Settlement Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). Plaintiff assisted in any way that he was asked, engaging in many interviews and reviews of information with his attorneys.

### ii. Class Counsel is experienced and qualified

Class Counsel will also fairly and adequately protect the interests of the Settlement Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Examples of recent BIPA class-wide settlements for Fish Potter Bolaños clients include: *Crumpton v. Octapharma Plasma*, 19-cv-8402 (N.D. Ill) ($9.9 million); *Devose v. Ron's Temporary Help*

12

*Services, Inc.*, 2019L1022 (Cir. Ct. Will Cty)($5.375 million); *Labarre v. Ceridian HCM, Inc.*, 2019 CH 06489 (Cir. Ct. Cook Cty)($3.49 million); *Johnson v. Resthaven/Providence Life Servs.*, 2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Marsh v. CSL Plasma, Inc.* 19-cv-07606 ($9.9 million); *Philips v. Biolife* Plasma, 2020 CH 5758, (Cir. Ct. Cook Cnty.) ($5.98 million); *Davis v. Heartland Emp. Servs.,* No. 19-cv-00680, dkt. 130 (N.D. Ill.) ($5.4 million); *Figueroa v. Kronos Incorporated,* 2019-CV-01306 ($15.2 million); *Martinez v. Nando's Peri Peri*, 2019CV07012 (N.D. Ill. 2020)($1.78 million); *O'Sullivan, et. al. v. WAM Holdings, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty.) ($5.85 million); *Barnes v. Aryzta LLC*, 2017CH11312(Cook Cty. Cir. Ct.)($2.9 million); *Burlinski v. Top Golf USA, No. 19-cv-06700*, dkt. 103 (N.D. Ill.) ($2.6 million); *Diller v. Ryder Integrated Logistics*, 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud Rests., Inc.*, 2019 CH 10620 (Cir. Ct. Cook Cnty.) ($2.1 million).

## 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### a. Common questions predominate

Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer

to one basic question: is there an essential common factual link between all class members and the Defendant for which the law provides a remedy? The common question predominating in this case is whether Defendant collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits.

### c. Plaintiff's Notice Program and Class Notice Form Merit Approval

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and

manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

Distribution of Notices directly to Settlement Class Members by U.S. mail is reasonable.

### III. Conclusion

Because the Settlement is fair and provides significant monetary relief to the Settlement Class, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order, which will be submitted to the Court via its proposed order email address.

Respectfully submitted,

Dated: June 8, 2023                    /s/ David Fish
                                       One of Plaintiff's Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*Attorneys for Plaintiff and Others Similarly Situated*

**CERTIFICATE OF SERVICE**

  The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on June 8, 2023, which will serve a copy on all counsel of record.

            <u>/s/ Mara Baltabols</u>
            One of Plaintiff's Attorneys