IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN STEGMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PETSMART LLC,<br><br>Defendant. | Case No. 1:22-cv-01179<br><br>Hon. Thomas M. Durkin |

**PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Steven Stegmann ("Plaintiff"), individually and on behalf of the Settlement Class certified in the Preliminary Approval Order (Dkt. 46), by and through their undersigned counsel hereby moves for judgment and final approval of the class action Settlement and Release Agreement ("Settlement Agreement"), attached to this motion as Exhibit 1, reached with Defendant PetSmart LLC ("PetSmart" or "Defendant") (collectively the "Parties") through arms-length negotiations. As detailed below, notice was robust with no requests for exclusion and no objections received. Class members will each receive a substantial direct cash benefit (or an award of paid time off) in line with the amounts received by class members in other comparable settlements under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or "the Act"). Class members who are currently employed by the Defendant had the opportunity to choose paid time off ("PTO") instead of a direct cash payment. Nine Class Members currently employed by Defendants requested PTO in lieu of a cash payment by check. The Settlement Administrator will transmit to Defendant funds equivalent to the pro rata cash payments that those nine Class Members would have received had they elected cash payments.

1

I. **INTRODUCTION**

As more fully described herein, the Parties originally reached a class settlement for employees of Defendant who used the Vocollect system and who are not subject to an arbitration agreement, in the gross amount of $899.27 per person. Following preliminary approval, Defendant provided a class list to the Settlement Administrator that identified 590 Settlement Class Members. Notice went out according to this list of 590 Settlement Class Members.

After the notice date, Defendant determined that there were an additional 36 Settlement Class Members ("Additional Class Members") who inadvertently were not included in the original list and who have not received Notice of the proposed Settlement. The Parties have conferred and propose continuing the Final Approval Hearing to allow time to send Notice to the 36 Additional Class Members. With the addition of these Additional Class Members, the Settlement Class will include 626 Settlement Class Members. Under the Settlement Agreement, the Gross Settlement Fund will be increased from the figure set forth in the Settlement Agreement ($424,455, which was based on a class size of 472)[1] to $562,943.02 (632 Settlement Class Members times $899.27 per member), and the amount of the requested Fee Award also will increase.

The Settlement is a strong result as it is structured to maximize the number of Settlement Class Members who will receive a settlement payment: each Settlement Class Member will automatically be sent a payment unless they filed a claim form electing to receive an award of paid time off; there is no requirement that they submit a claim form to receive a pro rata cash

---

[1] In Plaintiff's preliminary approval motion, he referenced a class size of 472 people. Following preliminary approval in in preparation for notice, Defendant then provided a Class list with the increased class size of 590. After Notice was sent, and after the original objection/exclusion deadline, Defendant discovered yet another 36 Class members. Defendant has expressed that it is now confident that the final class size is 626 (inclusive of the additional 36 individuals).

payment. The nine Settlement Class Members who chose the PTO option can use it at any time during which Defendant's employees otherwise are permitted to use paid time off: (i) during the calendar year in which the paid time off is awarded under this Settlement; and (ii) during the next calendar year.

In accordance with the Court-approved plan described in the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") and as ordered by this Court, direct individual notice of the Settlement was mailed in both English and Spanish, along with the form to claim PTO in the alternative. *See* Exhibit 2, Barazesh Decl. at ¶ 9. At the conclusion of the deadline, there were zero requests for exclusion, and zero objections. *Id.*, at ¶¶ 13-14. Most of the members on the original Class List of 590 were successfully mailed Notice (97.1%). *Id.* ¶ 12. After the Notice date, 36 Additional Class Members were discovered. As a result, the Parties propose continuing the Final Approval Hearing to send the Additional Class Members Notice and provide those Additional Class Members with an adequate exclusion/objection and PTO claim opportunity.

Following the substantial Notice process for those on the original Class List of 590, Plaintiff respectfully submits that the complete absence of objections and exclusions speaks to the fairness, reasonableness, and adequacy of the Settlement, the effectiveness of the Notice, as well as the ease of the administration plan. The overwhelmingly positive reaction from Settlement Class Members also underscores the value the Settlement Class Members place on the terms of the Settlement agreed to by the Parties. This is a fair and reasonable result, particularly in view of the significant known and unknown risks and anticipated delays involved in litigating the merits of BIPA claims and inherent in pursuing these claims individually for a large percentage of Settlement Class Members. The overall Settlement and payment structure represent a substantial

benefit to Settlement Class Members. Subject to approval by the Court approval, any residual funds associated with checks that Settlement Class Members do not cash will be distributed equally between *cy pres* recipient Prairie State Legal Services and Defendant. *Id.* ¶ 38(i).

For the reasons set forth below, both the form and substance of this Settlement satisfy the standards for final approval, and it should therefore be approved.

## II. PROCEDURAL HISTORY

On January 20, 2022, Plaintiff filed a Class Action Complaint in the Circuit Court for the 13th Judicial Circuit, LaSalle County, Illinois, alleging that Defendant violated BIPA by and through use of a Vocollect system. (Dkt. No. 1).

Plaintiff alleges that Defendant failed to provide written notice detailing how or why it was collecting, capturing, storing, and/or using his biometric data, or provide any policies concerning data retention. *Id.* ¶ 46. Plaintiff further alleges that Defendant did not obtain a written release from Plaintiff or the putative class members before it collected, captured or otherwise obtained their biometric data. *Id*. ¶ 47.

On March 7, 2022, Defendant removed the case from state court to this Court. Dkt. No. 1. On April 6, 2023, the Parties informed the Court that they had reached a class-wide settlement. Dkt. No. 39. Following a number of drafts of a settlement agreement, the Parties were able to come to a mutually agreeable resolution of their claims.

 Unlike the typical biometric case in the employer context that involves the use of fingerprints for timekeeping, this case involved warehouse workers utilizing a headset like the one pictured. While the Defendant disagreed, Plaintiff alleged that the technology at issue utilized a "voiceprint", which is protected under the Biometric Information

Privacy Act.

On July 6, 2023, the Court entered a Preliminary Approval Order for the Settlement. Dkt No. 46. The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The first two steps in this process have occurred. With this Motion, Plaintiff respectfully requests that the Court take the third and final step in the process by granting final approval of the Settlement.

### III. SUMMARY OF PROPOSED SETTLEMENT TERMS

#### A. The Settlement Class

The Settlement Class includes 626 persons who were employed by Defendant during the class period who used the Vocollect system and who are not subject to an arbitration agreement with Defendant.[2] For settlement purposes only, the Court preliminarily approved a Settlement Class consisting of the following:

---

[2] The Settlement Class does not include, for example, contract workers employed by temporary staffing agencies who were not employed by Defendant or employees of Defendant who are subject to an arbitration agreement with Defendant. Those individuals are not a part of this Settlement and are not bound by it.

>The persons identified on the Class List, which includes the current and former PetSmart LLC employees that PetSmart LLC's records identify as having used the Vocollect system at the Ottawa, Illinois distribution center during the period from January 20, 2017 to the date of preliminary approval of the settlement and who are not subject to an arbitration agreement with PetSmart LLC.

### B. Administration and Notice

The administration and notice procedure were designed to provide Settlement Class Members with direct written notice of the Settlement, in both English and Spanish—and included a form to claim PTO in lieu of a cash payment (for the equivalent amount in paid time off). Consistent with draft notices submitted to the Court at the time of preliminary approval, the detailed Notice fully described the Settlement terms and provided information clearly informing Settlement Class Members of their options and how to opt out, object, claim PTO in lieu of payment, and obtain additional information from the Administrator and/or directly from Class Counsel. *See* Exhibit 2. The Notice identified the amounts that could be paid out of the Gross Settlement Fund (service award, attorneys' fees, litigation costs, administration expenses) and estimated net check amount.

In compliance with the Settlement Agreement and consistent with the Order Granting Preliminary Approval ("Preliminary Approval Order"), Defendant provided the Settlement Administrator with a list of the individuals identified as Settlement Class Members ("Class List") along with all known contact information. *Id.* ¶ 6. That Class List included the names and contact information for 590 Settlement Class Members. *Id.* The Administrator cross-referenced the names and addresses with the U.S. Postal Service's ("USPS") National Change of Address Database and, through this method, updated any outdated addresses. *Id.* ¶ 7.

On July 13, 2023, the Administrator mailed the Notice in both English and Spanish, along with the Election to Receive Paid Time Off. *Id.* ¶ 9. After the initial mailing, USPS returned 116

Notices. *Id.* ¶ 11. Through additional searches, the Administrator was able to locate many updated addresses. *Id.*

After the conclusion of the deadline, the Administrator received no requests for exclusion and no objections to the Settlement. *Id.* ¶¶ 13, 14. In total, 573 individuals of the original 590, who constitute 97.1% of this Class list, were successfully mailed notice. *Id.* ¶ 12.

### C. Class Release

Settlement Class Members who do not exclude themselves, and other Releasors defined in the Settlement Agreement, will release the Releasees, as defined in the Settlement Agreement, from the Released Claims, which are defined in the Settlement Agreement to include: "any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on BIPA or other federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the collection, capture, storage, use, profit from, possession, disclosure, and/or dissemination of biometric data, including all claims that were brought or could have been brought in the Action, belonging to any and all Releasors." Ex. 1 ¶ 24.

### D. Monetary Relief for Participating Settlement Class Members

While denying all liability and wrongdoing, Defendant has agreed to establish a Gross Settlement Fund of $562,943.02, equal to $899.27 per Settlement Class Member to resolve the Released Claims on a class action basis. The Gross Settlement Fund is the maximum amount that

7

Defendant shall be obligated to pay under the Settlement. Only those Settlement Class Members who do not timely exclude themselves shall be bound by the Settlement Agreement. The "Net Settlement Fund" is the Gross Settlement Fund minus the following deductions, once approved by the Court: Class Counsel's attorneys' fees and litigation costs; the Settlement Administrator's Administrative Expenses; and the Class Representative's Service Award. The Net Settlement Fund shall be distributed pro rata to Settlement Class Members in accordance with Paragraph 38 of the Settlement Agreement.

Settlement Class Members, with the exception of the nine who elected PTO, will be paid their pro rata award via direct checks from the Net Settlement Fund. The nine Settlement Class Members who elected to receive PTO will be allocated the equivalent of the pro rata direct check payment as time off. For reference, the approximate net payment is $550 per person, and a Settlement Class Member who selected the PTO option who earns $20 per hour will receive 27.5 hours of paid time off. The time to use the PTO and what happens if the employee relationship terminates prior to the deadline for using the PTO is explained in the Settlement. *Id.* ¶ 38.

The vast majority of the Settlement Class, those designated to receive a cash payment, will have 120 days to cash their settlement payments. Funds associated with checks not cashed by the deadline will be distributed equally, 50% to *cy pres* recipient Prairie State Legal Services subject to approval by the Court and 50% returned to the Defendant. *Id.* ¶ 38(i).

### E. Class Representative Service Award

As described in the Fee Motion, in exchange for his service on behalf of the Settlement Class Members, the Settlement Agreement provides for a Service Award of $5,000 to be paid to Steven Stegmann for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, and recovering money for the Settlement

Class. Mr. Stegmann provided information as requested by his counsel before and throughout the litigation, was constantly available, and assisted Plaintiff's counsel whenever called upon. Mr. Stegmann took substantial direct and indirect risk by bringing the action in his name and agreeing to participate fully in discovery and trial. The time, risk, and effort Mr. Stegmann put into the case should be recognized and encouraged through the Service Award.

### F. Attorneys' Fees and Costs

Consistent with the Motion for Preliminary Approval, Class Counsel requests 35% of the Settlement Fund. As discussed above, since preliminary approval, the Settlement Class size has increased, and hence, the Gross Settlement Fund has increased to $562,943.01. Consistent with the final Settlement Class size of 626, the amount requested for final approval is $197,030.06 as attorneys' fees and $2,422.01 for reimbursement of out-of-pocket litigation expenses. *See* Exhibit 3, Baltabols Dec. Courts in this District have regularly awarded 33-40% of the gross fund as attorneys' fees in common fund class action settlements. Class Counsel also requests $8,846 in Settlement Administration costs. Exhibit 2, ¶ 12. This amount would include administration costs for the 36 Additional Class Members.

### IV. FINAL APPROVAL IS WARRANTED

Federal courts strongly favor and encourage settlements, particularly where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that the "claims, issues, or defenses of a certified class...may be settled...only with the court's approval...after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb.

28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g., Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

In deciding whether a settlement is fair, reasonable, and adequate, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the Defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Court should find that the Settlement is fair, reasonable, adequate, and should be approved.

### A. Rule 23(e)(2) Factors Favor Final Approval.

    i.    <u>The Class Representative and Class Counsel Have Adequately Represented the Class</u>

To establish that class counsel and the class representative have adequately represented the class, courts consider their performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's

Note to 2018 Amendment. This factor is satisfied where the class representative diligently participated and class counsel vigorously litigated. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery of facts and potential damages"). Key to this factor is whether class counsel and the class representative had sufficient information to negotiate a class-wide settlement. *See Snyder*, 2018 WL 4659274 at *4. This element corresponds with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Plaintiff cooperated throughout the entirety of this matter, including fielding questions, and regularly conferring with counsel, and waging the risk of being a Class Representative. Further, the Parties engaged in litigation that allowed them to comprehensively review and weigh the risks and probabilities of success, and calculate a range of potential damages prior to engaging in settlement discussions. Accordingly, the Class Representative and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

      ii.      The Settlement was Reached Through Arm's-Length, Non-collusive Negotiations

The settlement terms were negotiated at arms-length between attorneys experienced in the litigation, and settlement of class actions. Counsel for the Parties understand the unique and unsettled legal and factual issues in the case. BIPA litigation is an expanding and rapidly evolving area of law, and there existed multiple questions of law that remained unsettled by the courts. Through their experience, the attorneys were well positioned to evaluate the strengths and weaknesses, as well as the appropriate basis upon which to settle the case. Accordingly, the Settlement was properly obtained through arm's-length negotiations and was non-collusive.

### iii. The Settlement Secures Positive Relief for Class Members

The Settlement provides more than adequate relief for Settlement Class Members. After all deductions are made Settlement Class Members who are receiving cash payments are estimated to receive a check in the net amount of $550. This is a substantial per-person recovery that leaves little doubt that the benefit to the Settlement Class is quite positive. The per-person recovery substantially exceeds the amounts awarded to individuals in many previously approved BIPA class settlements. *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 gross per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross).

**A. The Proposed Settlement is Fair, Reasonable, and Adequate.**

i. Further Litigation Would be Highly Complex, Protracted, and Expensive to Address the Merits of Plaintiff's Claims and Class Certification

If the litigation had continued, it would have been complex, expensive, and protracted. Appeals that were pending at the time of negotiations were also considered. A few relative – and potentially dispositive – issues in BIPA jurisprudence were unsettled at the outset of this litigation but have now been decided by the Illinois Supreme Court. Had the Illinois Supreme Court decided that a one-year limitations period applies to BIPA claims the vast majority of Settlement Class Members would suddenly be rendered ineligible to obtain any relief because their claims would

12

become time-barred. *See Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801. Similarly, if the Illinois Supreme Court held that BIPA claims only accrue upon the first scan, many Settlement Class Members' claims would have become time barred. *Cothron v. White Castle Sys., Inc.,* 2023 IL 128004.

Finally, in the BIPA realm, litigation is not the only risk. Many bills were introduced to amend or repeal BIPA.[2] Affected businesses and interested organizations have publicly opposed BIPA. The Illinois Supreme Court recognized the potential financial impact of BIPA may impact discretionary damages and recently asked for the legislature to weigh in. *Cothron*, 2023 IL 128004, ¶ 43 (Feb. 17, 2023). *Cothron* was also subject to a petition for rehearing, that was only recently denied by the Illinois Supreme Court. In that opinion, the *Cothron* Court again asked the legislature for guidance and to "make clear its intent regarding the assessment of damages under the Act." *Id.* (rehearing denied July 18, 2023). The legislature has yet to respond.

> ii. Administration and Notice Procedures were Robust, and the Settlement has been Well Received by the Class Members

As described herein, class administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with as much time as possible under the circumstances to opt out or object to the settlement. The Settlement Administrator then performed multiple searches to update addresses. Of the original 590 Settlement Class Members, 573, or 97.1%, received notice. Ex. 2, ¶ 12. None of the Class Members opted out or objected to the settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (granting final approval of class settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'").

13

The lack of objectors denotes support for the settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ( "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). The fact that none of Class Members have neither opted-out nor filed objections to the proposed Settlement is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000).

All Class Members who did not exclude themselves or elect to be compensated with time off will receive a check without having to submit claims. Since the Class Members did not have submit claims to participate, this means 573 out of 590 Class Members (i.e., 97.1%) are expected to receive direct cash payments. Claims-made class settlements typically result in less than 15% of all eligible members receiving payment. *See McLaughlin on Class Actions § 6:24* (8th ed.) ("claims-made settlements typically have a participation rate in the 10–15 percent range."); *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (noting that it is not unusual to have participation rates of 10 to 15% and examining examples of rates lower than 5%); *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%.").

      iii. <u>The Opinion of Competent Counsel Weighs in Favor of Approval</u>

Here, Class Counsel affirms that this settlement provides a fair value and a significant benefit to the members of the Class, which meets or exceeds the typical BIPA class settlement. Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

## V. CONCLUSION

Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement. A copy of the proposed final order is attached as <u>Exhibit 4</u>.

Respectfully submitted,

Dated: August 31, 2023      /s/Mara Baltabols

               One of Plaintiff's Attorneys
               Fish Potter Bolaños PC
               111 East Wacker Drive, Suite 2300
               Chicago, Illinois 60601
               Tel. (312) 861-1800
               docketing@fishlawfirm.com
               *Attorneys for Plaintiff*
               *and Others Similarly Situated*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on August 31, 2023, which will serve a copy on all counsel of record.

                       /s/Mara Baltabols